[Civ. No. 825. Fourth Appellate District.—May 13, 1935.]

F. W. WITHROW, Respondent, v. J. F. BECKER, Appellant.

Everts, Ewing, Wild & Everts, Dan F. Conway and L. N. Barber for Appellant.

Russell & Heid for Respondent.

BARNARD, P. J.—From a judgment for damages for personal injuries suffered in an automobile collision, the defendant has appealed.

The collision occurred about 4 P. M. on October 29, 1930, on Olive Street, just outside the city limits of Porterville. Olive Street runs east and west, is 60 feet in width, has a 15-foot pavement along its center, and is oiled from either side of the pavement to the curb line. Villa Street runs north from Olive and California Street runs south, the west line of California Street being 12 feet east of the east line of Villa Street. There is thus a jog or offset in this intersection or it might be described as two intersections 12 feet apart.

On this afternoon the respondent, driving a one-ton truck, was proceeding south on Villa intending to proceed across Olive and south on California. At the same time the appellant was proceeding east on the paved portion of Olive. As the respondent neared the north line of Olive Street he stopped and looked to the right and the left. He testified that he saw appellant's car coming from the west, that it was then "a couple of blocks away", although he later estimated the distance as a hundred yards or more, that the other car was coming fast and that "I seen I had lots of time and I went right across." An independent eye-witness testified that at the time the respondent shifted gears and started across Olive Street the appellant's car was between 100 and 150 yards away and that it was approaching at over 40 miles an hour. The respondent started across Olive Street in first gear and changed to second gear, going at from five to ten miles an hour. Instead of going around the theoretical center of the intersection of Olive and Villa Streets he cut diagonally across in an easterly direction toward the entrance to California Street, and he did not give an arm signal. When his truck had gotten across the paved portion of Olive, or practically so, and as it was about to enter California Street, it was struck by the appellant's car, causing the injuries in question. There is some evidence that this collision occurred about fifteen feet south of the paved portion of

Olive while other evidence is to the effect that it occurred when all of the wheels of the truck were south of the pavement but while the body of the truck extended over the pavement some two or three feet.

The appellant testified that he had been familiar with this crossing for years; that as he approached the intersection he was traveling from 35 to 40 miles an hour; that he could not say whether or not he had looked to see whether cars were approaching from Villa Street; that he did not see the truck until he was within 30 feet of it, at which time it was right in front of him on the highway; that he could not go to the left because other cars were approaching on the north side of the highway; and that he pulled over to the right slightly off the highway and applied his brakes, but could not stop within the 30 feet. He also testified that he had a new car with four-wheel brakes which were in perfect condition. All of the other evidence is to the effect that no other cars were approaching from the east on the north side of the pavement, that two cars were standing to the north of this pavement, that there was ample room for the appellant to have gone to his left, and that if he had done so and stayed on the pavement the accident would not have occurred. There is no evidence of any stop sign at this intersection.

The appellant contends that the jury was erroneously instructed. It is first argued that the court should not have given an instruction containing subdivision (a) of section 131 of the California Vehicle Act, as then in force, relating to the right of way at an intersection. It is argued that the respondent was not approaching the intersection of Villa and Olive, within the meaning of the section referred to, but that he had stopped and that his right to proceed was governed by subdivision (a) of section 130 of the act, providing that a driver before starting a vehicle shall first see that such movement can be made in safety. And further, that the collision occurred in the intersection of Olive and California while both cars were proceeding over the same highway, Olive Street. The respondent entered the paved highway at the intersection of that street and Villa Street, and while the accident occurred after he entered Olive and while he was leaving that street at its intersection with California Street, his conduct at both intersections was in question. The instruction attacked was entirely appropriate in connection

with his entering Olive Street. And the court also gave the instruction which appellant argues should have been given, one containing the provisions of subdivision (a) of section 130 of the act, including the provision for giving a signal when turning, which lays down the rule he should have complied with in turning from Olive into California Street.

▉ It is next contended that the court virtually took the issue of contributory negligence from the jury by giving the following instruction:

"If you believe from the evidence that as plaintiff entered the intersection of Villa and Olive Avenues he looked to the right and observed defendant's automobile approaching at a distance from the intersection of one hundred yards, or more, then you are instructed that plaintiff had the right to assume that defendant's automobile would travel at a lawful and prudent rate of speed and under such control that it could be slowed down, or if necessary brought to a stop to enable plaintiff to proceed through the intersection with safety and under such circumstances plaintiff was under no duty to give further heed to defendant's automobile."

Many instructions on contributory negligence were given, including one to the effect that if the jury believed from the evidence that the respondent stopped before entering the intersection and looked in the direction from which the other car was approaching, that the other car was then at such a distance from the intersection as to lead an ordinarily prudent person to believe that a safe crossing could be made, and that in proceeding across the intersection the respondent acted as an ordinarily prudent person would have acted under the circumstances, it should not find him guilty of contributory negligence. In another, the jury was told that it was the duty of the respondent to keep as alert a lookout toward any automobile he knew to be approaching as a reasonably prudent man would keep under the circumstances, that a failure to keep such a lookout would be negligence, that if it found that the respondent, in approaching this intersection, failed to keep such a lookout for approaching automobiles as a reasonably prudent man would keep under the circumstances such failure constituted negligence, and that if it further found that such negligence proximately contributed to the accident, the verdict must be for the appellant. In addition to these other instructions the one in

question was given. The appellant argues that this instruction was prejudicially erroneous and cites *Galway* v. *Guggolz*, 117 Cal. App. 639 [4 .Pac. (2d) 290], where a similar instruction, but relating to a distance of 100 feet, was held erroneous. That case involved a through highway protected by a stop sign, and an order granting a new trial was being sustained. In the light of common experience it might almost be said that a driver who, at the time he enters an intersection which is not protected by a stop sign, sees another car 300 feet or more away from the intersection, has a right to assume that the driver of the other car will control the same, and that it will be safe for him to proceed without giving that car further attention. Conceding, however, that the instruction is erroneous, and it must be admitted that it would have been better to have omitted the same, we are of the opinion that it does not require a reversal under the circumstances here appearing. Its effect was considerably modified by the other instructions which fully covered the situation. The only negligence attributed to the respondent by the appellant is his failure to give an arm signal and his failure to pass around the theoretical center of the intersection. To this may be added his failure to wait until the approaching car had passed. Taking all of the evidence together, it is unreasonable to suppose that any jury would think that the respondent should have so waited. Under the circumstances, an arm signal would hardly have been seen by the appellant in any event, especially when he himself testifies that he did not even see the entire truck in time to stop, although it had entered the intersection, crossed the same, crossed the intervening 12 feet between that and the next intersection, and entered that intersection, and all this in broad daylight. It is equally impossible to see how any cutting of the corner by the respondent could have had any effect on the accident, under these circumstances, and the entire evidence indicates that if the respondent had gone around the center of the intersection he would not have so nearly gotten off the highway and his position, instead of preventing, would have aggravated the accident. It is not reasonable to suppose that any error in this instruction relating to the question of respondent's negligence had any effect on the jury in deciding the further question as to whether such negligence, if any, was one of the proximate causes of the accident. After reading all of the

evidence we are far from convinced that a miscarriage of justice has occurred in the respect now under consideration, and we therefore hold that the giving of this instruction does not require a reversal in view of article VI, section 4½, of the Constitution.

■ The appellant further maintains that the damages allowed are excessive and that the court erred in one of the instructions on the measure of damages. These contentions must be sustained. The jury brought in a verdict for $8,000 which, on proceedings for a new trial, was reduced to $4,500. The respondent testified that immediately after the accident the appellant told him that he was covered by insurance. The court instructed the jury that in fixing the damages it must take into consideration, among other things, "all the facts and circumstances in the case and fix the damages at such sum as from the evidence you may deem proper". We think this instruction was too broad under the circumstances of this case, especially in view of the testimony in the record to the effect that the appellant was covered by insurance. This may have had its effect upon the verdict which, as rendered, is so excessive as to indicate passion or prejudice upon the part of the jury. Nor do we think the matter has been sufficiently corrected by the reduction made in connection with the motion for a new trial.

■ With respect to his injuries the respondent testified that immediately after the accident he felt numb all over, that one of his fingers was "smashed", and that the next day he went to a doctor who treated him for about three weeks. A hernia then developed and the respondent testified that since that time he had been able to do light work only, that he had obtained some employment since the injury but had been unable to do heavy work because of the pain in his side, and that he was still unable to perform his usual work. He also testified with reference to his finger: "It is just a little stiff, that is all. I can place my hand in a normal way." The physician who attended him testified that the hernia was the result of the accident but that the same could be completely cured by an operation; that this operation would cost $250 for doctor bills and $75 or $80 for hospitalization and nursing; that after such operation he would have to remain in bed for about two weeks; and that he would then be unable

to do any work which would require heavy lifting for about two weeks.

It was the duty of the respondent to minimize his damage in every way. In *Baker* v. *Borello*, 136 Cal. 160 [68 Pac. 591], the court said: "A party injured by the tort of another must not, by his negligence or wilfulness, allow the damage to be unnecessarily enhanced; and if he does so he cannot recover for the increased loss." While there was some evidence of pain and suffering, the evidence shows that this was nearly all the result of the hernia which the respondent suffered. The respondent alleged in his complaint that it would be necessary for him to undergo an operation for the correction and cure of the hernia. No reason appears why this was not done soon after the accident, which occurred a year and three months before the trial, and it is fully apparent that such an operation would have greatly reduced such damage as appears from the plaintiff's inability to work. The evidence is entirely insufficient to justify the amount of damages awarded and, in our opinion, the appellant is entitled to a new trial on that issue.

The judgment is reversed and the cause remanded for a new trial solely upon the issue of the amount of damages, with directions to the trial court to render judgment in favor of the respondent upon the determination of that issue.

Marks, J., and Jennings, J., concurred.