[Civ. No. 1590. Fourth Appellate District.—February 21, 1936.]

JOHN PRATO, Jr., a Minor, etc., et al., Respondents, v. GEORGE G. SNYDER, Appellant.

Fred A. Wilson and Wilson & Coughlin for Appellant.

Stephen Monteleone and Harold King for Respondents.

BARNARD, P. J.—This is an appeal from a judgment for $30,000 in favor of the plaintiffs based upon personal injuries received by the minor plaintiff, who will hereinafter be referred to as the respondent.

About 5 P. M. on April 19, 1934, the respondent was riding a motorcycle in a westerly direction on U. S. Highway No. 99 between Beaumont and Redlands, and at the same time the appellant was driving an automobile easterly along the same road. In his complaint the respondent alleged that he was traveling on his right half of this highway, that he passed over an area covered with oil which caused his motorcycle to slide and throw him to the pavement on that side of the road, and that as he lay there the appellant negligently drove on his left or wrong half of the highway and struck him with his automobile, inflicting the injuries complained of.

The respondent testified that the accident occurred on a hill at a point where the road curved to the north; that as he came down this hill at about 35 or 40 miles an hour he was riding near his right-hand edge of the pavement; that as he came around the curve his motorcycle turned sideways and slipped from under him, going straight ahead down the hill; that he fell to the pavement in a seated position and slid down hill wearing off his pants; that when he stopped he was facing uphill; that he attempted to get up and got to his knees; that he tried to get up and was only able to lift his head; that he was then on his right half of the road near its north edge; that he looked over his shoulder and saw an automobile about 50 feet away coming at a high rate of speed; and that "When I saw the car coming I attempted to get to my knees, and all I can remember after that is getting to my knees. After that everything went black." He further testified that he did not see any truck and that he had not tried to pass a truck shortly before he fell. There is no direct evidence that he was struck by the appellant's car.

The appellant testified that just before he reached the point in question he saw a truck approaching from the east; that just as the truck was about to pass him the respondent, on his motorcycle, came around from behind the truck and in attempting to pass the same came over to the south or the appellant's side of the highway; that he had no time to stop; that the respondent was three feet to the south of the center of the highway when his motorcycle slipped and he fell; that his left front wheel ran over the rear wheel of the motorcycle, cutting his left front tire and bending that wheel; that he was then unable to control his car; and that his car proceeded with locked brakes over to the north edge of the road where it collided with another car which is not involved in this action. The appellant's story is confirmed by his wife, who was riding with him at the time.

From the testimony of other witnesses it appears that the motorcycle was first found after the accident on the center line of the highway some 60 or 70 feet westerly from the point where the appellant's car came to rest and that the respondent was lying on the north edge of the pavement, a few feet westerly from the motorcycle. It also appears, without contradiction, that there were two skid-marks on the pavement showing that the appellant's automobile had skidded with locked brakes for about 50 or 60 feet. These skid-marks were parallel with each other the right distance apart for automobile wheels and began on the south half of the highway, the northerly one beginning at a point three feet south of the center line of the highway. From that point they proceeded unbroken in a northeasterly direction to the place where the appellant's automobile stopped. There was evidence that most of the oil on the pavement at the point in question was on the south half of the highway, although there was some oil on the north half.

As appears from the pleadings, as well as the evidence, the entire issue in this case was as to whether the respondent, in passing a truck, came over to the south or his wrong half of the highway and there slipped and fell, or whether he fell and was struck by the appellant's automobile on the north or his right side of the highway.

It is appellant's first contention that it conclusively appears from the physical facts that he could not have been on his wrong side of the road. The rear wheel of the motor-

cycle was crushed in a manner indicating that it was run over while it was lying on the pavement, which corresponds with respondent's testimony that it slipped from under him and went down the hill before he saw the car coming. It would also appear from the respondent's testimony and the other evidence that if he was hit by the automobile at all this occurred after the automobile had passed over the motorcycle. The motorcycle was found in the center of the highway and the respondent was found at the north edge of the highway a few feet west of the motorcycle. When he fell the respondent was coming down hill on a road curving to his right or to the north, at a speed of 35 or 40 miles an hour. It would be natural for him to roll or slide further down hill than would the motorcycle lying on its side, and he was found in that position. It would also be natural for him, under those circumstances, to slide toward the north with the curve and slope of the road. It appears without question that the skid-marks left by appellant's automobile began about three feet south of the center of the highway and proceeded in a northeasterly direction for some 50 or 60 feet to the north edge of the road. While the physical facts would seem to indicate that the respondent slipped and fell from his motorcycle on the south or his wrong side of the road, he relies upon the appellant's testimony to the effect that he thought he traveled about 15 feet from the point where he struck the motorcycle to the point where he put on his brakes and began to skid. It is argued that it is possible to infer from this testimony that the appellant may have been on the north or his wrong side of the road and that while he traveled these 15 feet he pulled over to his own side of the road where the skid-marks began.

The appellant further argues that the nature of the injuries received by the respondent conclusively shows that he was injured by his fall to the pavement and that he was not struck by the appellant's car. These injuries consisted of what is called a compression fracture of the twelfth dorsal and the first lumbar vertebra. While the ribs are attached to that dorsal vertebra they were not injured. There was no external evidence of injury except a slight cut on the right hand and right forearm, and there was no outward abrasion or discoloration and nothing on the skin to show. Both of respondent's doctors testified that such an injury could have

occurred from such a fall to a sitting position although one of them testified that he considered it much more likely that it came from some sort of a lateral blow. He further testified that it would not be possible to thus fracture the twelfth dorsal vertebra without injuring the ribs attached thereto unless the blow hit below the ribs, and that in order to do that it would be necessary for the blow to come from something soft, otherwise it would make an abrasion or discoloration of the skin. It must be conceded that it is difficult to see how the respondent's injuries could have been caused by his being struck by an automobile, without leaving other effects or signs of injury.

While the most reasonable inference to be drawn from the evidence is that the appellant was not on his wrong side of the road and that the injuries to respondent were not caused by his being struck by appellant's automobile, a contrary inference might possibly be drawn from these portions of the evidence. That being the case, it may not be held that the physical facts conclusively demonstrate that respondent's injuries could not have been caused by anything done by the appellant. ■ A reading of the record strongly indicates, however, that the verdict of the jury was based more upon sympathy for the respondent, whose injuries were serious, than upon any evidence justifying an inference that the appellant was guilty of negligence.

Under such circumstances, the appellant's attack upon the instructions given deserves the most careful consideration. The only negligence charged to the appellant, in the complaint or in the evidence, was that he was on the wrong side of the road and that he ran over the respondent while lying on his own right side thereof. The only real issue was as to which of these parties was on the wrong side of the road at the time of the accident. While most of the instructions were correct in themselves, this issue was not squarely and clearly put to the jury and we are left in a position where it cannot be told whether the jury believed that the appellant was on the wrong side of the road or believed that he negligently did something while on his own side of the road and at a time when the respondent had the legal right to be on that side.

■ The jury was instructed that every person has the right to presume that every other person will perform his

duty and obey the law and that in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to a danger which comes to him only from a violation of law on the part of another. The giving of such an instruction has been questioned in a case where the lawfulness of the acts of both parties is directly in issue (*McPherson* v. *Walling*, 58 Cal. App. 563 [209 Pac. 209]). A number of instructions were given to the effect that the driver of an automobile is bound to anticipate that he may meet persons or vehicles at any point of the street or highway, that in order to avoid a charge of negligence he must keep a proper lookout and keep his machine in such control as will enable him to avoid a collision, and that he must not proceed blindly or presume that the way is clear. While most of these instructions contain the clause "without any fault on the plaintiff's part" the jury had already been instructed that the plaintiff had the right to assume that the defendant would obey the law and to assume that he would drive with due care. The jury was then instructed that if the defendant was not overtaking or passing another automobile and was not placing his vehicle in a position to make a left turn it was his duty to drive as closely as practicable to the right-hand edge of the highway, and that if they found that at the time and place involved he did not drive his automobile as closely to the right-hand edge of the highway as a person of ordinary prudence would have done and that his failure to do so proximately caused the injuries to the plaintiff, without fault on the plaintiff's part, then their verdict must be in favor of the plaintiff. If, as the respondent testified, he fell and was struck on his half of the highway and near the north edge thereof, the proximate cause of the accident was the fact that the appellant was driving on the wrong side of the road and not the fact that he was not driving as closely as possible to his right-hand edge of the highway. If, as the appellant testified, the respondent was passing the truck on his wrong side of the road, he would not be without fault and the failure of appellant to keep to the right-hand edge of the highway would not have been the proximate cause. There was no evidence indicating that the respondent was rightfully on the south side of the road and that the accident happened merely because the appellant failed to keep as close as possible to his right edge of the pavement. Taking all of the instructions

together, we cannot escape the conclusion that, under the peculiar circumstances here appearing, they may well have led the jury to believe that a higher duty rested upon the appellant than upon the respondent, that the appellant was bound to anticipate that he might meet the respondent at any point on the highway, that the respondent had a right to be upon his wrong side of the highway, and that the appellant was liable, in such an event, if he had failed to drive as closely as possible to his right-hand edge of the highway.

 In one instruction the jury was told "that the defendant George G. Snyder in this case had no right to assume that the road ahead of him was clear, but under all circumstances and at all times was required to exercise reasonable care to anticipate the presence of others, and operate his automobile in the manner required by the California Motor Vehicle Act; . . . " The jury was thus instructed that the appellant was required under all circumstances and at all times to anticipate the presence of others, even though such others were on the wrong side of the road. Particularly under the circumstances of this case it should have included the limitation that this duty of anticipation applied in favor of those who were using the highway in a lawful manner at the time and who were lawfully upon that side of the road. This instruction continued: "if you believe that he did not know that plaintiff John Prato, Jr., was on the highway in such close proximity, if you shall find this to be a fact, considering all of the circumstances, as to occasion a situation of danger, if any, the fact of such lack of knowledge, if any, on his part, is not an excuse for conduct which would have amounted to recklessness if, in the exercise of reasonable care, defendant would have known that plaintiff John Prato, Jr., was on the highway in such situation, if at all". This virtually told the jury that the appellant's failure to see the respondent may have amounted to recklessness and omitted any question as to the sudden appearance of the respondent from behind the truck. If given at all it should, under these circumstances, have been made applicable only to what occurred on the respondent's side of the road, in the event the jury accepted his testimony that the accident happened there. 
It certainly is not the law that the driver of an automobile must anticipate that anyone will suddenly come from behind another vehicle and appear on the wrong side of the road,

and that it amounts to recklessness to fail to see one who thus suddenly appears. It should be remembered in this connection that the jury was repeatedly instructed that the appellant was bound to anticipate that he might meet persons or vehicles at any point on the street or highway. While great emphasis was put in many of the instructions on the duty resting upon the appellant to anticipate other vehicles at any point on the street and to see all that might be seen, none of the instructions given adequately covered or clearly informed the jury of the fact that one is not bound to anticipate the sudden appearance of another on his wrong side of the road. Conceding that most of these instructions were correct in themselves, what we are here criticizing is the effect of giving them all, under the circumstances here appearing, without clearly pointing out their limitations and the corresponding duty resting upon the respondent.

Two instructions given were as follows:

"All drivers of vehicles on a public highway are required by law to keep a vigilant lookout ahead so as to avoid, if reasonably possible, a collision with any other vehicle or person lawfully upon such highway. Failure to keep such lookout, or failure to see that which may be readily seen, if a driver is looking, would constitute negligence as a matter of law."

"It is negligent to look and fail to see that which is in plain sight or to listen and fail to hear that which is plainly to be heard, and to look or listen and to fail to see or hear that which is plainly to be seen or heard by the exercise of ordinary care is as negligent as not to look or listen at all."

In instruction No. 26 the court instructed the jury "if you shall find that the defendant failed to see or hear that which was plainly to be seen or heard by the exercise of ordinary care, such failure, if any, to see or hear, would be just as negligent as not to look or listen at all". The first of these, referring to any other vehicle or person lawfully upon the highway, omitted the element that such a person must also be using the highway in a lawful manner. The others in effect instructed the jury that if this appellant did not see the respondent it was negligence on his part, as a matter of law. They leave out of consideration the fact that the respondent may have suddenly appeared on the wrong side of the highway and the question whether it was possible for the appellant to have seen him in time to avoid the accident. We think

these instructions should not have been given under the circumstances here appearing. In effect, they make it negligence, as a matter of law, to fail to see that which may be seen. Under the general rule the failure to look at all constitutes negligence as a matter of law, while the question of whether one who looks sees all that he should is one of fact for the jury. The question as to whether the appellant was negligent in failing to see the respondent in time to avoid the accident was, under the circumstances of this case, peculiarly a question of fact which should have been left entirely to the jury.

The instructions as a whole not only presented the issue raised by the pleadings and the evidence as to whether the appellant was negligent in being on the wrong side of the road, but also permitted the jury to pass upon the question as to whether he had been guilty of some form of negligence even though he remained on his own side of the road, when there was no evidence to sustain any finding of this nature.

While most of the instructions follow similar instructions which have been more or less approved in other cases, the question of their correctness depends, after all, upon the circumstances of the case in which they are used. We think a number of them should not have been given under the circumstances of this case and that sufficient error appears to be prejudicial, in view of the nature of the evidence and the facts involved. The cause should be retried and submitted under instructions which clearly and squarely present to the jury the real and only issue as to which of these parties was on the wrong side of the road at the time of the accident and which inform the jury as to the respective rights and obligations of both parties under both sets of circumstances.

The judgment is reversed.

Marks, J., and Jennings, J., concurred.