[Civ. No. 17152.   First Dist., Div. One.   Feb. 14, 1957.]

MARY TAYLOR, Respondent, v. PACIFIC CONTAINER COMPANY, LTD. (a Corporation) et al., Appellants.

Daniel J. O'Brien, Jr., and Daniel J. O'Brien III, for Appellants.

George L. Cooke for Respondent.

BRAY, J.—Defendants appeal from a judgment after jury verdict in favor of plaintiff in the sum of $19,000 for personal injuries received in a pedestrian-automobile accident.

## QUESTIONS PRESENTED

1. Alleged erroneous instructions.

2. Was expert testimony on stopping distance of truck admissible?

3. Were damages excessive?

## EVIDENCE

The accident happened at or near the intersection of Third Street and Williams Avenue in San Francisco. As the sufficiency of the evidence on the question of liability is not challenged it is not necessary to detail the evidence. Plaintiff's contention was that she was hit by defendants' truck in the middle of a crosswalk and there was evidence to support the contention, as well as evidence that defendant driver was negligent and plaintiff was free from contributory negligence. Obviously, the jury so found. On the other hand, defendants' contentions were that plaintiff could have darted from behind the bus which she had just left, crossed an 8-foot parking lane, two 10-foot lanes and 3 to 5 feet into the lane in which defendant was driving, directly in front of, and 3 to 5 feet from, defendants' truck at a point approximately 18 feet beyond the crosswalk; that defendant driver was not negligent and that plaintiff was contributorily negligent. The jury did not so find.

1. *Instructions.* (a) To look and not see.

Defendant driver (Myer) testified that he was making a left hand turn at the intersection. Plaintiff seemed to appear out of nowhere and was right in front of him about 3 to 5 feet from the truck when he first saw her. He does not know how she got there. He claimed that while proceeding to make the turn he looked in the crosswalk area and in the area north of the crosswalk (the area where he claimed plaintiff was hit) but saw no one. He further testified that just prior to the impact he was looking straight up the street, right in the direction from where plaintiff must have come. As before stated, plaintiff claimed to have been walking in the crosswalk when hit. The court gave the following instructions: "It was the duty of the defendant to look for pedestrians on the street and in his path before he attempted to cross at an intersection. This duty is not fulfilled by looking and failing to see that which is readily and clearly

visible. When to look is to see, the mere statement that one did look and did not see will either mean that the person was negligent in not seeing that which he could see or that he did not look." "A driver of a vehicle is bound to anticipate that he may meet persons at any point in the street and in order to avoid a charge of negligence, he is bound to use ordinary care and keep an ordinarily careful lookout for such persons and keep his machine under such control as will enable him to avoid collision." ▉ These instructions were erroneous. The first one is similar to one disapproved in *Prato* v. *Snyder*, 12 Cal.App.2d 88 [55 P.2d 255]. It apparently made not only failure to look but failure to see, negligence as a matter of law. "Under the general rule the failure to look at all constitutes negligence as a matter of law, while the question of whether one who looks sees all that he should is one of fact for the jury." (P. 97.) It is entirely different from BAJI No. 140, upon which it probably was intended to be based. The second instruction is worse. It followed an instruction to the effect that a greater amount of care is required of the driver of a truck than of a pedestrian, and in effect, as applied to the facts of this case, it stated that a driver must anticipate that a person may run out from behind a parked vehicle and must keep his machine under such control as will enable him to avoid collision with that person. "A driver . . . is bound to anticipate that he may meet persons at any point in the street and . . . he is bound to . . . keep his machine under such control as will enable him to avoid collision." The driver testified that he was going 10 to 15 miles an hour and did not see plaintiff until suddenly she appeared directly in front of his truck and only 3 to 5 feet away. Obviously, his truck was not under such control that it could stop in time to avoid striking a person who might dart out in his path from behind a parked vehicle. The law has no such requirement. This instruction was similar to one denounced in *Blythe* v. *City & County of San Francisco*, 83 Cal.App.2d 125, 135 [188 P.2d 40], which stated that it was the legal duty of a motorman to control his streetcar so as to enable him to stop at any time to avoid persons lawfully upon the highway. As there pointed out, if that were the law, it would be the duty of the motorman, proceeding carefully, to stop regardless of the time at which a person came upon the tracks. "Negligence cannot be based upon such an exacting formula completely divorced from the variables of time, place and surrounding circumstances. The

instruction, containing as it does an incorrect statement of law, was properly refused." (Pp. 135-136.) The Blythe instruction was not as bad as the one here, for there it referred to persons *lawfully* upon the highway, while here there was no such qualification of persons in the street. "The first of these, referring to any other vehicle or person lawfully upon the highway, omitted the element that such a person must also be using the highway in a lawful manner. The others in effect instructed the jury that if this appellant did not see the respondent it was negligence on his part, as a matter of law. They leave out of consideration the fact that the respondent may have suddenly appeared on the wrong side of the highway and the question whether it was possible for the appellant to have seen him in time to avoid the accident." (*Prato* v. *Snyder, supra,* 12 Cal.App.2d at p. 96.) No modification of these instructions appears in the instructions given, although considering the instructions as a whole the error is not as glaring as appears in a reading of these two instructions separately from the others. Moreover, the failure to see instruction, although apparently making the question one of law rather than a question for the jury, stated a common sense proposition which every juror surely knows, namely, that if one fails to see that which is readily and clearly visible, the only reasonable inference is that he either did not look or was negligent in failing to see what he should have seen. The limitations of these instructions should have been given, and not having been given, the instructions were erroneous. The most serious question is whether under the facts of this case they were prejudicial. If the evidence and the reasonable inferences therefrom justify only one conclusion, namely, that either the driver did not look, or failed to see that which he must have seen had he looked, then as a matter of law he was negligent and there would be no alternative but for the jury to so find. If the physical facts, the other evidence in the case, and the driver's own testimony required such a conclusion, the mere fact that he said he looked but could not see, would not in itself constitute a conflict in the testimony. As said in *Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237, 242 [116 P. 513], the law does not permit a driver to blind his eyes to what is clearly visible, " '. . . neither will the eye of the law become blinded to the true situation of the case merely because of the absurd statement of a witness or witnesses, "I looked and could not see," . . .' " The evidence of plaintiff and her witnesses clearly establishes that the

accident took place at the crosswalk. There were many contradictions in defendant driver's own testimony. He admitted that the blood spot which was found on the island indicated the point where plaintiff was placed after being lifted. He testified that he helped lift her directly at right angles from the street where she lay after being hit, to the island. (There were no blood spots or other indications of the point of impact in the street.) He testified that the blood spot was 18 to 20 feet from the northerly line of the crosswalk. Yet he contends that after first seeing her his truck went 8 to 9 feet before hitting her, and that after hitting her the truck went 3 to 5 feet and that she lay 3 to 5 feet ahead of the stopped truck. He also testified that the point of impact was 18 to 20 feet from the crosswalk. Thus, if she were hit at a point 18 to 20 feet from the crosswalk, and ended up 3 to 5 feet from the truck which had gone 3 to 5 feet after hitting her, the point at which the blood was found would have to be 24 to 30 feet from the crosswalk. (Plaintiff's witnesses testified that she was not taken to the island at right angles from the place where she lay, but diagonally in a northerly direction.) Actually defendant driver testified at one time that the place where she lay in the street after the accident was "somewhere around 24 feet" from the crosswalk, although he also testified that he helped move her directly to the island and that there she was 18 to 20 feet from the crosswalk. He even adopted the officer's mark on the map showing the blood spot as being 21 feet from the crosswalk. Other witnesses placed the spot there. These discrepancies and the question of exactly where she was when hit, were probably matters for the jury to straighten out. However, whether she was hit in the crosswalk or northerly thereof, there was no evidence from which the jury could have excused defendant driver's failure to see her. He himself does not attempt to excuse it. He does not know why he did not see her. To be hit as she was, in the third lane, she had to traverse at least 31 feet of the street in front of defendant driver who claims he was looking in the direction from which she came. He does not claim that any cars obscured his vision. There was nothing in plaintiff's evidence which helped defendants on this question of the failure of defendant driver to see what must necessarily have been plainly visible to him. Plaintiff testified that while waiting for the light to change she saw eastbound vehicles waiting to come out of Williams Street on the west side of Third, one

being a truck. She did not see them again. She did not see defendants' truck until a second before it struck her, and then saw it only out of the corner of her eye. This fact could have been accounted for by the fact that plaintiff, after leaving the sidewalk when the light changed, was looking in the direction in which she was going. Apparently the jury so found. Under the evidence, as a matter of law, defendant driver must be held either not to have looked, or negligently not to have seen that which he could and should have seen. Therefore, the instructions could not have been prejudicial.

(b) Other instructions.

Defendants select certain instructions completely separated from the rest of the instructions and attempt to give them a narrow meaning unrelated to the other instructions. The instruction at page 150 of the reporter's transcript upon the right of a pedestrian in a marked crosswalk to assume that the driver of an automobile will obey the law is a correct statement of the law. The instruction did not, as claimed, take from the jury the question of whether plaintiff herself was using ordinary care. There is no resemblance between this instruction and the one condemned in *Roller* v. *Daleys Inc.*, 219 Cal. 542, 545 [28 P.2d 345].

Defendants object to an instruction on the doctrine of *respondeat superior* to the effect that defendant corporation would be bound by "any acts or omissions or negligence" of its agent, defendant driver. Assuming that the words "any acts or omissions" should have been left out of the instruction, no prejudice could result from their being in, as the jury was several times instructed that the defendants could only be liable if some act of negligence of the driver proximately contributed to the accident.

In an instruction defining the issues the court stated, in effect, that if the jury should find that the defendant driver was negligent but such negligence was not the proximate cause of plaintiff's injury its verdict must be for "the plaintiff." It obviously was an inadvertent substituting of the word "plaintiff" for "defendants," as admittedly the instruction was correct except for this one word. Taking this inadvertence in context with what preceded and followed it in the same instruction, let alone in the instructions as a whole, it is clear that the jury must have understood what was intended and that no harm could have been done. As said in *Fagan* v. *Union Pac. R. R. Co.*, 85 Cal.App.2d 583, 587 [193 P.2d 776], where in some of the instructions the

512

word "employee" referred to plaintiff, while in others it referred to coemployees of plaintiff, the error is so obvious as to negate its existence.

■ An instruction on contributory negligence concluded with a statement that negligence, if any, of plaintiff would not be a defense unless it concurred and cooperated with the negligence of the defendants. While the words "if any" should have been added after "defendants," the instruction when read with the others cannot be construed to be an assumption by the court that defendants were negligent, or that it gave the impression that the plea of contributory negligence was an admission of negligence by defendants. See *Hasty* v. *Trevillian*, 102 Cal.App. 405, 410 [283 P. 148], where the court said: "The defendants objected to instructions 41 and 42 because those instructions used the word 'negligence' without following the same by such words as 'if any.' It is sufficient to state that neither instruction when read together with all of the other instructions, may be said to instruct on a question of fact." *Sheets* v. *Southern Pac. Co.*, 212 Cal. 509 [299 P. 71], is not in point. There the court instructed that the plea of contributory negligence admitted negligence of the defendant. Nor is the instruction condemned in *McKeon* v. *Lissner*, 193 Cal. 297, 306-307 [223 P. 965], similar to the one here. The language of the instruction there was such that the court held that it told the jury that if a defect in the elevator existed, defendants were negligent, even though a proper inspection had failed to disclose any defect.

■ An instruction applied the crosswalk rules if a pedestrian were not more than one or two feet outside of the limits of the crosswalk. The instruction should not have been given as there was no testimony that plaintiff could have been in that area. Under the evidence she either was in the crosswalk or at least 18 feet out of it. However, the error could not have been prejudicial.

■ The court instructed that while both parties were chargeable only with the exercise of reasonable care a greater amount of care was required of defendant driver because he was driving a truck capable of inflicting death or injury upon others in the street. Such an instruction has been held to be proper. (*Dawson* v. *Lalanne*, 22 Cal.App.2d 314, 315 [70 P.2d 1002].) *Cucinella* v. *Weston Biscuit Co.*, 42 Cal.2d 71 [265 P.2d 513], approves of the holding in the Dawson case and cites many cases upholding the same and similar instructions.

■ From an examination of the entire record, it appears that prejudicial error has not been shown, and that it does not appear from the record that a different result would have been probable had the questioned instructions not been given. Therefore the jury verdict should be upheld. (Cal. Const. art. VI, § 4½; Code Civ. Proc. § 475; *Jacobs* v. *Bozzani Motors, Ltd.*, 109 Cal.App.2d 681, 685 [241 P.2d 642].)

2. *Expert Testimony.*

■ Lieutenant of Police Williams, whose competency as an expert on the subject is not challenged, testified over objection that a truck of the kind defendant driver was driving, with the upgrade and dry condition of pavement shown by the evidence, going 15 miles per hour, would require about 22 to 26 feet to stop, including reaction time. Defendants assign the admission of this evidence as error, because they claim it was not relevant to the distance it would take *defendant driver* to stop *his* truck. This type of evidence was held proper in *Berkovitz* v. *American River Gravel Co.*, 191 Cal. 195, 201 [215 P. 675], citing several cases. See also *Martindale* v. *Atchison, T. & S. F. Ry. Co.*, 89 Cal.App.2d 400 [201 P.2d 48]. Defendants' contention that the lieutenant's testimony was not admissible because based on *a* truck and *a* driver and not *the* truck and *the* driver involved in the accident, would bar all expert testimony on the subject. This is not the law, nor can it be. See, in addition to the above cases, 7 California Jurisprudence 2d, section 390, page 303.

3. *Damages.*

■ The verdict was for $19,000. Special damages included therein were $529.37. "It has been decided by this court that the only means of discovering the existence of passion and prejudice as influencing a verdict is by comparing the amount of the verdict with the evidence before the trial court. ■ To say that a verdict has been influenced by passion and prejudice is but another way of saying that the verdict exceeds any amount justified by the evidence." (*Zibbell* v. *Southern Pac. Co., supra,* 160 Cal. at p. 254.)

■ Plaintiff suffered a complete laceration of the ulnar nerve of her left hand. Her left side and lower back were made sore. Her right leg was black and blue. Her arm, hand and legs were skinned. There was a fracture through the distal end of the sacrum. The day after the accident an operation on her wrist was performed to suture a severed

nerve. She was then in the hospital only one day. In April, 1955, she was hospitalized four days for an operation on the severed nerve. Altogether she lost only 13 days of work. For a while her wrist motions were somewhat restricted due to discomfort and pain. There was almost a complete anesthesia of the ulnar aspect (little finger side) of the left hand to pin prick. At the present time there is atrophy of the space between the thumb and index finger (left hand) giving a sunken appearance. She tends to have a "cocking up" or a "slight clawing" of the little finger of the left hand, has trouble straightening it completely. Motions of the thumb are performed very well. There is no ability to bring the small finger in toward the rest of the hand. She has recovered sensation over the ulnar nerve, "but not real sharp." There is no sensation to pin prick at the end of her little finger. The operation of April, 1955, produced no improvement.

Plaintiff is right handed. Normally the grip of the left hand in a person is 90 per cent of the right. Hers is 50 per cent. This disability is permanent in the absence of surgery. With surgery there is a 50-50 chance to restore more sensation but it is doubtful if return of more than 50 per cent of the lost motor power would return. The sacrum has healed but there is some soreness which, in time, might disappear, although that is not certain. Plaintiff, at the time of the accident, was an I.B.M. tab operator at $260 per month. Normally she could advance to a senior operator earning $350-$450 per month. But it would require use of both hands, which she cannot do at the present. She is now working as a comptometer operator. Salary was not stated.

It is apparent that plaintiff has a left hand which has a substantial loss of power, and is somewhat deformed in appearance. There is clawing and cocking in the little finger. She has an unsightly scar and bump on her wrist. There is a reasonable probability that the local soreness and aching in the sacrum may be permanent. The condition of the hand is permanent. It interferes with her ability to obtain a job in which she is required to use both hands. This is in addition to the pain and suffering she has undergone and the slight scar on her nose. In *Withrow* v. *Becker,* 6 Cal. App.2d 723 [45 P.2d 235], it was held that the plaintiff had a duty to minimize damages by undergoing a hernia operation which the evidence showed would have completely remedied the disability. Here the projected surgery had only a 50-50 chance at best. Moreover, plaintiff has already

had one operation which was not successful. We cannot say that the damages are so high as not to be supported by the evidence, or as to be the result of passion or prejudice. Considerable weight, also, must be given by us to the fact that the trial court weighed all the facts of the case in refusing on motion for new trial to reduce the amount or grant a new trial. (See *Deshotel* v. *Atchison, T. & S. F. Ry. Co.,* 144 Cal.App.2d 224, 230 [300 P.2d 910]; *Leming* v. *Oilfields Trucking Co.,* 44 Cal.2d 343, 359 [282 P.2d 23].)

*Lavin* v. *Fereira,* 10 Cal.App.2d 710 [52 P.2d 518], is not a criterion in this case. There the court seemed to doubt that the plaintiff had suffered a severance of the median nerve in his hand. The court held that the injury, if there was one, was minor in character and that the ill effects could be remedied by a simple operation, which would result approximately in an 80 per cent recovery. There was no suggestion in the opinion that the hand condition would, as in our case, interfere with the plaintiff's work.

Awards in other cases are not necessarily a criterion of the proper award in the instant case. "The types of injury, the age, physical condition, financial status of the various plaintiffs, and the value of the dollar at the time of injury, vary so greatly that it is almost impossible to find a case where the situation is on all fours with a case at bar." (*Germ* v. *City & County of San Francisco,* 99 Cal.App.2d 404, 421 [222 P.2d 122]. See also *Buswell* v. *City & County of San Francisco,* 89 Cal.App.2d 123, 131 [200 P.2d 115]; *Newton* v. *Thomas,* 137 Cal.App.2d 748, 770 [291 P.2d 503].) We adopt the statement in *Drotleff* v. *Renshaw,* 34 Cal.2d 176, 180 [208 P.2d 969]: ". . . while the award to plaintiff may be liberal, it cannot be regarded as without 'the realm of reason' under all the circumstances to be considered. (*Freeman* v. *Nickerson,* 77 Cal.App.2d 40, 52 [174 P.2d 688]; see also *Butler* v. *Allen,* 73 Cal.App.2d 866, 870 [167 P.2d 488].)"

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied March 15, 1957, and appellants' petition for a hearing by the Supreme Court was denied April 10, 1957. Spence, J., was of the opinion that the petition should be granted.