CARLOS ACHA, ETC., Plaintiff and Appellee, *v.* RAMÓN NEVARES,. Defendant and Appellant.

No. 8261.   Argued June 6, 1941.—Decided July 23, 1941.

236

*R. Rivera Zayas* and *Joaquín Velilla* for appellant.   *Géigel & Silva* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an action for damages. The claim was for $3,000 and an award of $500 was granted, with costs but without including attorney's fees. An appeal was taken from the judgment. The prevailing party filed a memorandum of costs amounting to $64.70 which was challenged by the other party, and the court ordered it reduced to $39.70. An appeal was also taken from that order. Both appeals have been prosecuted together.

The action was brought by Carlos Acha, a minor, represented by Eduardo Acha, his father with *patria potestas.* In the complaint it was alleged, in short, that the plaintiff was 19 years old and that the defendant, Ramón Nevares, was of legal age, the proprietor of a dairy farm or establishment known as "Las Monjas," in Río Piedras, and that he was the owner of a horse cart which he used in his business; that in the afternoon of June 18, 1937, at the corner of D Avenue and N Street in Eleanor Roosevelt Development, Río Piedras, the said cart, driven by Erasto Vázquez, an employee of the defendant who at the time was acting in the course of his employment, ran over the plaintiff, fractured his right foot, bruised his chest and right leg, with the result that he had to be confined in a hospital for one and a

half months, and suffered "intense physical pain and great mental anguish"; and that the accident was due to the negligence of the employee who was driving the cart at an excessive speed without taking into account the width of the streets and the curves, without having any bell, horn, or apparatus for signalling in said vehicle, and deviating, without justification, from the right side of the road, without reducing the speed or giving any warning.

The defendant filed a motion to strike out which was denied, and thereupon he interposed a demurrer to the complaint, on the ground of insufficiency, which was also overruled. He then answered and admitted to be the owner of a dairy farm and of a horse cart which he used in his business, but denied the other averments of the complaint on information and belief. He set up as special defenses that the accident, if any, was due to the contributory negligence of the plaintiff who was going about with other friends aimlessly, without keeping to the right of the road and heedless of the noise of the vehicle or of the alarm signal with which it gave warning of its approach, and that, according to his information and belief, the plaintiff has been fully compensated for his injuries by the U. S. Employees' Compensation Commission.

When the case was called for trial, and before any evidence had been introduced, the plaintiff moved that, owing to his having become of age, the complaint be considered as amended in the sense that he was acting in his own behalf instead of being represented by his father. The court granted the substitution over the objection of the defendant. The hearing of the evidence for the plaintiff was proceeded with. At the close thereof, the defendant stated that he would only call as a witness Dr. Alonso, who would testify that the fractured foot of the plaintiff did not show any external signs of having been run over by the vehicle's wheel, and the plaintiff admitted that the doctor if called would so testify.

Based on the pleadings and the evidence, as considered and weighed by him in his statement of the case and opinion, the district judge rendered, on March 11, 1940, the judgment to which we have already referred.

In support of his appeal, the appellant has assigned eight errors claimed to have been committed by the trial court in acting without jurisdiction; in overruling the motion to strike out and the demurrer; in making certain findings; in failing to hold that the accident was due to the contributory negligence of the plaintiff; in holding that the "Eleanor Roosevelt" streets are public; in adjudging the defendant to pay any compensation; and in compelling the defendant to pay the sum of $39.70 as costs.

The above errors are assigned and discussed fully and ably by the appellant in his brief, stating the facts clearly and citing many and select authorities, and they are likewise impugned by the appellee in his brief. Both briefs are a credit to the profession in general and particularly to the distinguished counsel who subscribe them.

In the first assignment a jurisdictional question is raised, namely, that as the Eleanor Roosevelt Development, in which the accident giving rise to the claim occurred, was built by the Government of the United States of America pursuant to the Federal project for the removal of slums through a Federal agency known as "Puerto Rico Reconstruction Administration," jurisdiction of the action belongs to the Federal and not to the Insular courts.

We need not go deeply into the consideration of the assignment. About two months after the filing of the brief in this case, this court in *López* v. *Court,* 58 P.R.R. 117, 129, decided the same question thus:

"In accordance with the facts admitted by the parties and the decisions and statutes to which we have referred, we are of the opinion and hereby hold that the United States, when they bought and took possession of the lands of the Eleanor Roosevelt Development did not *ipso facto* assume exclusive jurisdiction over said devel-

opment, because the buildings built upon them are not included in the classification of 'other needful buildings' to which the Constitution refers; that no averment having been made or evidence presented concerning the acceptance of exclusive jurisdiction by the Federal Government, we are compelled to presume conclusively that there has not been such an acceptance; and lastly that if The People of Puerto Rico at any moment or for any reason lost civil and criminal jurisdiction over the lands and the inhabitants of said housing development, that jurisdiction was reacquired by virtue of the provisions of section 421 *supra,* with the sole limitation that The People of Puerto Rico cannot intervene in any form in the administration of said ward, nor execute any act which may destroy or diminish the effective use of the properties with respect to the purposes for which they were built.''

There was no error. The court had jurisdiction to take cognizance of the action.

Nor was the second error committed, or, if committed, could it cause a reversal of the judgment. We refer to the refusal of the court to strike out from the complaint the particulars mentioned in defendant's motion.

In that motion it was sought to strike out eleven particulars, the second of which contains seven items, all of which refer to conclusions of law or to argumentative, irrelevant, or redundant matter.

Perhaps from a careful analysis it might be found that technically the appellant is right as to some objected particulars, but nowhere is it shown that he was actually prejudiced, and Section 142 of the Code of Civil Procedure, 1933 ed., provides that:

''The court must, in every state of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect.''

Applying that rule to motions to strike out, this court held in *People* v. *Heirs of Valdés,* 31 P.R.R. 213, to quote from the syllabus:

"If overruling a motion to strike out from the complaint matters which involve conclusions of law is an error, it is not sufficient ground for a reversal when such defects are merely technical."

See also the decisions in *López* v. *American Railroad Co. of P. R.*, 50 P.R.R. 1, and *García* v. *Suárez*, 56 P.R.R. 394.

Let us consider the third assignment which relates to the demurrer interposed to the complaint. It is maintained, in the first place, that the complaint fails to state a good cause of action against the defendant because it is not alleged therein that the defendant was in the car and accompanied the driver, nor that the vehicle was used in a commercial or public enterprise; and, in the second place, there is discussed a question which arose subsequent to the filing of the demurrer, viz., amending the complaint so as to enable the plaintiff to continue to prosecute the action in his own behalf.

In our judgment the complaint is sufficient. It need not allege that the defendant was traveling in the cart, since it alleged that the defendant "was the owner of a dairy farm or establishment known as 'Las Monjas' .... " and "of a horse cart which he used in his dairy business," which cart was the one that ran over the plaintiff.

Recently, in the case of *Aponte* v. *Palacios*, 55 P.R.R. 674, 676, this court said:

"The principal contention of the appellant is that the complaint does not sufficiently set forth that the defendant was engaged in an enterprise. Perhaps the averment could have been a little more specific, but we are of the opinion that paragraph 3, especially when it says that the automobile was and is engaged in conducting milk, describes the operation of a commercial enterprise. Some support is lent to this view by the words 'plate C-327', because these signs, as we may take judicial notice, apply to automobiles generally engaged in commerce."

The fact that nothing was alleged in the instant case in reference to the license plate is immaterial. Such allegation would have strengthened the fact that an enterprise was in-

volved, but that does not mean that the averments made are insufficient. A person who is the proprietor of a dairy farm and who owns, besides, a cart which he uses in his dairy business, is comprised in the following provisions of Sections 1802 and 1803 of the Civil Code, 1930 ed., to wit:

"Section 1802.--A person who by an act or omission causes damages to another when there is fault or negligence shall be obliged to repair the damage so done.

"Section 1803.—The obligation imposed by the preceding section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.

"  *     *     *     *     *     *     *

"Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employees in the service of the branches in which the latter may be employed or on account of their duties."

█ Nor did the court err in allowing the amendment. From the terms in which the complaint was originally drawn, nothing appears to show that the father claimed anything for himself. It was the son who acted, represented by his father during his minority, and in his own behalf when he became of age. The action prosecuted was not altered thereby, and therefore the amendment was permissible.

We fail to find anything in the cases of *Orta* v. *P. R. Railway, L. & P. Co.*, 36 P.R.R. 668, and *Ruberté* v. *American Railroad Co.*, 52 P.R.R. 457, cited by the appellant, which might be in conflict with this conclusion. The case of *J. Ochoa & Hnos.* v. *J. González Clemente & Co.*, 29 P.R.R. 948, presents a very different situation.

If the father had claimed anything for himself, then the appellant would be right. In the instant case, however, as appears from the wording of the complaint, the father only performed his duty as required by Section 153 of the Civil Code, 1930 ed., thus:

"Section 153.—The father and the mother have, with respect to their children not emancipated:

"1. The duty of supporting them, keeping them in their company, educating and instructing them in accordance with their means, and representing them in the exercise of all actions which may redound to the benefit of such children."

That the injured minor had a cause of action for the injuries sustained by him is evident, and that said cause of action still existed when he reached his majority is also evident. The only change in the plaintiff's status was his capacity to sue. During his minority his capacity to act was not complete and his father must supply the want. On reaching his majority such need ceased, and it was logical and lawful that he should act in his own behalf.

As has been repeatedly held by this court, the original source for the prosecution of an action for damages caused by the act or omission of another when there is fault or negligence is Section 1802 of the Civil Code, 1930 ed. The one subsequently created in favor of the father or mother, pursuant to Sections 60 and 61 of the Code of Civil Procedure, is different. In *Rivera* v. *Reyes*, 31 P.R.R. 420, 422, this court said:

"In our opinion it is impossible to reach the conclusion suggested by the appellee. The action was brought by her in her capacity as mother. She sued in her own name for the damages sustained by her. The attitude of the parties and the judgment of the court are clear. There is only one paragraph of the complaint which might be susceptible of a different interpretation, but it is not of such strength as would of itself allow a variation of the cause of action at this time.

"The actions accruing to the mother and to the son are different. The law applicable is section 60 of the Code of Civil Procedure. See the case of *Arreche* v. *Porto Rico Railway Light & Power Co., post,* page 424. Summing up the jurisprudence of California construing statutes similar to our own, Pomeroy expresses himself as follows:

" 'The last clause under this section has given rise to considerable perplexity and has received much attention in recent decisions of our supreme court.

" '1. With regard to damages in cases of injuries to a minor in action brought under section 376. In such instances two causes of

action arise, one in favor of the infant for his personal injuries, and one in favor of the parent or guardian for losses suffered by him on account of the injury to the child or ward: *Durkee* v. *Central Pac. P. R.*, 56 Cal. 388; 38 Am. Rep. 59. This case passes upon the questions under consideration, and in the course of the opinion therein delivered the court, per Chief Justice Morrison, says: ''Where the action is brought by the parent, loss of service, medical attendance, expenses of nursing and the like matters are to be considered by the jury, and in such cases compensation is the rule . . . When the action is brought on behalf of the child, there are other separate and distinct elements of damage. The child recovers not for loss of time or service or medical attendance or expense of curing, but for the injury personal to himself, such as pain and suffering, both physical and mental, disfigurement, etc.'' . . . ' ''

■ The fourth assignment is formulated thus: ''The lower court committed manifest error, which substantially prejudiced the defendant, in weighing the evidence and in making, among others, the following findings of fact: (*a*) that the cart to which the complaint and the evidence make reference belonged to the defendant; that it was driven by one of his employees; that it was so driven during the course of his employment; that the driver failed to give any warning; that he was negligent in failing to keep to his right and in swerving to the left; that the accident was due to the negligence of the vehicle's driver, and that the plaintiff suffered bodily pains and discomfort; and (*b*) that there was negligence on the part of the defendant as the employer of the driver of the vehicle in question.'' The fifth and sixth assignments read thus: ''Fifth error. The lower court erred in not holding that the accident was due to the contributory negligence of the plaintiff.'' ''Sixth error. The lower court erred in holding that at the time of the accident the streets in the Eleanor Roosevelt Development were public streets.''

We have examined the transcript of the evidence and, in our judgment, the same supports the conclusions reached by the trial court.

The facts held to have been proven were the following:

"That at about 2 o'clock in the afternoon of June 18, 1937, the plaintiff, a messenger of the P.R.R.A. in the Eleanor Roosevelt Development project in Hato Rey, was walking along B Street towards D Street of said development and when reaching the latter street he took to the left; that said streets were still under construction but that B and D Streets were already paved, according to the testimony of Engineer Ramírez, although they had not yet been approved by the P.R.R.A.; that said streets were used by the public in going towards the highway which leads to the Insular Sanatorium, as the regular highway had been closed; that at the intersection of B, D and N Streets, where D Street starts, there was a mound which was afterwards turned into a garden; that while he was going along D Street, a horse cart driven by Erasmo Vázquez came from B Street and, upon reaching D Street, swerved to the left of the street and without giving any warning with either bell or alarm, as it had no signal apparatus, ran over plaintiff and inflicted on him several bruises on the right leg from the top to the ankle and the fracture of the lower end of the right tibia; . . . that the cart which ran over the plaintiff carried a painted sign reading more or less as follows: 'Las Monjas Dairy of Ramón Nevares, License No. 4;' . . . "

The court, in its statement of the case and opinion, went on to say: "The defendant maintains that it has not been shown that the horse cart which inflicted the injuries on the plaintiff belongs to the defendant or that Erasmo Vázquez was his employee nor that he was driving the said cart in the course of his employment, especially inasmuch as the streets of the Eleanor Roosevelt Development were not public streets at the time of the accident."

It held as follows:

"We have already stated that it appears from the evidence that, although said streets were under construction, the public already used them for traveling over them; moreover, they had to do so in order to reach the Insular Sanatorium. The argument of the defendant, therefore, is without force. As to the ownership of the car, the same has been admitted in paragraph 3 of the answer, for the complaint refers to a single cart and not to the possibility that the defendant might own other carts. It has been shown, moreover, that

the painted sign on the cart bore the name of the dairy of the defendant and the number of the license. This, together with the admission contained in the answer, is sufficient to establish the presumption, which has not been overcome by the defendant, that the cart belonged to him.

"It is our opinion that, both as to this point and as to the agency of the driver of the cart, the decisions involving similar facts in regard to motor vehicles are applicable. See Blashfield, Cyclopedia of Automobile Law and Practice 338; *Tieman* v. *Red Top Cab Co.*, 3 P. (2d) 381; *Mann* v. *Stewart Sand Co.*, 243 S.W. 406, and 96 A.L.R. 638.

"As to the agency, see *Sánchez* v. *Asiatic Petroleum Co.*, 40 P.R.R. 98; *Almodóvar* v. *Acosta*, 43 P.R.R. 191; *Lotti* v. *McCormick Lumber Co.*, 51 P.R.R. 323; *Morales* v. *Otero*, 53 P.R.R. 542, and *Aponte* v. *Palacios*, 55 P.R.R. 674, which uphold the doctrine that proof that the defendant owns the vehicle which inflicted the damages establishes the presumption *juris tantum* that the driver thereof was a servant or agent of the defendant and was acting in the course of his employment.

"Under the facts as proven, it is our opinion that the driver of the vehicle was negligent in failing to take to the right and in allowing his vehicle to swerve to the left of the street without any warning and in running over the plaintiff, inflicting on him the bruises and the fracture above described."

We have studied the jurisprudence cited, much of it from this court, and find that the same is applicable herein. It is not necessary to add anything thereto. The errors are nonexistent.

In the seventh assignment of error the question is raised as to the compensation granted.

The court in its statement of the case and opinion weighed the evidence correctly and found:

" . . . that the plaintiff was confined in the Clínica San José from June 18 to July 28, 1937, where his right leg had to be immobilized in a plaster cast; that he then was kept under a physiotherapeutical treatment until August 16 but was not disabled for working or for walking; . . . that the plaintiff was earning $40 monthly and was unable to work from June 18 to August 19, 1937; it has not been shown whether the plaintiff received any money during that time nor whether he was compensated in any way for the lesions received

by him as the result of the accident, although we might presume, as stated by the defendant, that he was insured with the Federal Compensation Bureau, although the plaintiff has actually failed to prove that he had to pay anything for the time he was kept in the hospital or for the treatment he received. Therefore, no specific damages have been shown. It has been shown, however, that the lesions and the treatment caused the plaintiff pain and discomfort which, in his case, seemed more severe by reason of his nervous temperament.''

Under those facts, the sum of $500 awarded as damages not only is not erroneous but is reasonable.

▇▇▇▇▇ The eighth and last of the errors assigned corresponds to the second appeal, taken from the order reducing and then approving the memorandum of costs.

The court allowed the sum of $2 to each of the seven witnesses for the plaintiff who appeared, and it is the appellant's contention that inasmuch as only five of them testified the compensation allowed to two of them is not authorized by law; and he further alleges that since the sum claimed as damages amounted to $3,000, of which only $500 was granted, he was not obstinate in defending and ought not to have been mulcted in costs.

As regards the first particular, it appears from the record that counsel waived the testimony of two of his witnesses because it was cumulative evidence. All of them were present in the morning and in the afternoon and subject to the rules of the court.

The applicable law—Act No. 94 of 1937 (Session Laws, p. 229, amending Section 327 of the Code of Civil Procedure, —provides that there shall be paid ''Two (2) dollars for each witness and for each day of attendance at court, plus mileage in going from and returning to his residence'' (subdivision 3 of the section as amended), so that it is the attendance which must be taken into account. Therefore, it was not error for the court to have so determined.

Of course, if a party abusively produced a great many of unnecessary witnesses whom he meant not to call to the

stand but for the sole purpose of claiming afterwards the statutory compensation, a different case might arise. Here the cautious attitude of the party is justified. He might have needed the testimony which he waived if the available testimony had failed him or had not been sufficient.

Concerning the obstinacy, irrespective of the fact that it is not by itself a necessary requisite for the imposition of costs, inasmuch as costs follow the judgment by express provision of law, it is well to say that, although the reduction of the amount of the claim is a favorable circumstance to be considered, it is not of such nature as to imply absolutely the absence of obstinacy on the part of the defendant in prosecuting his defense when, as happens here, the emphasis of his defense was not placed on the amount of compensation but on the absence of any liability on his part, in which respect he has been defeated.

The appeal must be overruled and the judgment and order appealed from affirmed.

Mr. Justice Todd, Jr., took no part in the decision of this case.