[Civ. No. 7611. First Appellate District, Division One.—September 23, 1931.]

MARY TIEMAN, Respondent, v. RED TOP CAB COMPANY (a Corporation) et al., Appellants.

42

B. P. Gibbs, Barry J. Colding, Theodore Hale and Carroll B. Crawford for Appellants.

Thomas C. Nelson for Respondent.

GRAY, J., *pro tem.*—The alleged owner and the alleged operator of a taxicab, jointly, appeal from a judgment, based upon a verdict awarding a widow damages for her husband's death, caused by injuries received in a collision with such taxicab. The only testimony as to the accident is given by decedent's then companion, produced as a witness on behalf of respondent. He testified that, between the hours of 7 and 8 on Christmas eve, the decedent, another and himself, after walking westerly on the north sidewalk of Folsom Street, between Third and Fourth Streets, in the city of San Francisco, reached a space fifteen to twenty feet wide between two automobiles parked along the north curb; that the street was well illuminated and a light drizzling rain was falling; that, as he stepped off the curb to go through the opening, he saw the taxicab, without lighted headlights, 150 feet west, coming down the center of Folsom Street; that decedent and he advanced one or two steps and stopped between the parked automobiles to let the taxicab pass; that decedent was then an arm's length in front, diagonally to his right; that the taxicab swerved and, a second or two after they stopped, struck them as they stood between the parked automobiles; and that the taxicab, without skidding, stopped at the point of collision.

Appellants first claim that this testimony does not establish actionable negligence upon their part, because the lack of lighted headlights could not have been a proximate cause of the accident and the speed of the taxicab was not sufficient to constitute negligence. It is apparent that the lack of lighted headlights did not interfere with this witness' observation of the approaching taxicab, for he testified that he saw it 150 feet west of the point of collision. Although there is no direct testimony as to whether decedent looked or saw the taxicab, it would appear that he had an opportunity, equal to that of his companion, so to do. Since the driver's point of view differed from that of such companion, it does not follow that he could have seen the pedestrians as readily as the companion observed the taxicab. ■ As the purpose

of lighted headlights is not only to warn a pedestrian of a vehicle's approach, but is also to enable its operator to see the pedestrian, their absence is material in determining such operator's negligence. (*Mardorf* v. *Penniman,* 68 Cal. App. 696 [230 Pac. 12].) While the absence of lighted headlights was probably inconsequential as to the decedent's observation, yet it remained for the jury to say whether such absence contributed to the accident. (*La Count* v. *Pasarich,* 205 Cal. 181 [270 Pac. 210]; *Neilson* v. *Walker,* 105 Cal. App. 23 [286 Pac. 1091].) ■ Although this witness was unable to estimate the speed of the taxicab in miles per hour, still the jury could make such estimate from the fact that the taxicab traveled 150 feet while the witness took one or two steps from the curb and waited one or two seconds before being hit. (*Arrelano* v. *Jorgenson,* 52 Cal. App. 622 [199 Pac. 855].) Even if the operator was driving within the speed limit, "it was still a question of fact for the jury to determine whether under all of the circumstances present he was at that time driving his automobile, as is required by the provisions of section 113 (a)" of the California Vehicle Act, "at a careful and prudent speed not greater than was reasonable and proper, having due regard for the traffic, surface, and width of the highway, and at such a speed as not to endanger the life, limb, or property of any person; for if he was not, he was guilty of negligence even though he was not exceeding the statutory limit. . . . (*Garns* v. *Halpern,* 193 Cal. 193 [223 Pac. 545]; *Cook* v. *Miller,* 175 Cal. 497 [166 Pac. 316].)" (*Truitner* v. *Knight,* 83 Cal. App. 655, 660 [257 Pac. 447, 450].)

■ The collision occurred in the vicinity of the northerly projection, across Folsom Street, of Ritch Street, which, in bisecting the block southerly of Folsom Street terminates at the latter's southern line. In support of their affirmative defense of contributory negligence, appellants offered and the court admitted in evidence a section of an ordinance of the city and county of San Francisco reading as follows: "Pedestrian's Limited Right to Use of Roadway. When within the Central Traffic District or a Business District, no pedestrian shall cross a roadway other than by a crosswalk." Since the definition of its terms, contained in the ordinance, was binding upon the judge and jury (36 Cyc. 1105; 25 R. C. L. 1049), the court properly admitted,

on respondent's offer, another section, which defined an intersection as "the area embraced within the prolongation of the property lines of two or more streets which join at an angle, whether or not one such street crosses the other", and a crosswalk as "that portion of the roadway included within the prolongation of curb and property lines at street intersections . . . " It was incumbent upon appellants to prove that the ordinance was violated by decedent; and in doing so, that it was applicable under the facts. (*Rathbun* v. *White,* 157 Cal. 248 [107 Pac. 309]; *Vicino* v. *Amador,* 71 Cal. App. 604 [236 Pac. 369].) This they failed to do, because evidence that there were stores on both sides of Folsom Street did not show that the locality of the accident was within the "central traffic district" and because, in absence of evidence as to the location of the extended curb and property lines on Ritch Street, the decedent's position relative to the crosswalk is unknown. The witness' statement, obviously mistaken when compared with other portions of his testimony, that he stepped off the curb at a point fifteen or twenty feet west of the continuation of the easterly line of Ritch Street, across Folsom Street, does not aid in locating the crosswalk, because it fails to designate such easterly line as either the curb or property line. "The question of whether or not the pedestrian is negligent in crossing a street is one which, in the absence of express statutes regulating his conduct, must ordinarily be left to the jury, for the conduct of an ordinarily prudent person under such circumstances must be largely determined by the condition of the traffic at the particular time and place in question." (*Burgesser* v. *Bullock's,* 190 Cal. 673, 677 [214 Pac. 649, 651].)

█ Equally without merit is appellants' further claim that the evidence establishes decedent's contributory negligence, because it shows that he left a place of safety on the sidewalk and stepped into the street between the parked automobiles and in front of the taxicab without attempting to assure himself that no vehicles were approaching. The evidence does not support the statement that decedent stepped in front of the taxicab but, on the other hand, clearly shows that he was standing in a position of apparent safety between the parked automobiles and that he had no reason to fear that the taxicab would suddenly swerve into

him. There is no direct testimony as to whether decedent looked before leaving the sidewalk, although his stopping would support an inference that he knew the taxicab was approaching. In absence of contrary evidence, it must be presumed that he used ordinary care for his own safety and that, in so doing, he looked. (*Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [41 A. L. R. 1027, 239 Pac. 709].)

 The complaint alleged and appellants' joint answer denied that at the time of the accident, Red Top Cab Company was the owner of the taxicab and that Leland Warrington as its employee was operating it. Appellants contend that the evidence is insufficient to support the jury's finding that the company was the owner and Warrington as its employee was operating such taxicab. The following evidence, offered by the respondent, is the only evidence upon these issues. The companion's testimony that, immediately after the accident, he saw the company's name painted upon the taxicab, was sufficient proof of ownership. (*Guderitz* v. *Boadway Bros.*, 39 Cal. App. 48 [177 Pac. 859] ; 2 Blashfield, Cyc. of Automobile Law, p. 1636.) Warrington's admission that he was driving the taxicab at the time of the accident, made to a process server about a month thereafter, was admissible to prove this fact as far as he was concerned, although such admission was not binding upon his coappellant. (*Lampton* v. *Davis Standard Bread Co.*, 48 Cal. App. 116 [191 Pac. 710] ; *Shaver* v. *United Parcel Service*, 90 Cal. App. 764 [266 Pac. 606].) Although evidence of oral admissions is to be viewed with caution, the jury is the judge of its effect and value (Code Civ. Proc., sec. 2061) ; and the credibility of the witness. (Code Civ. Proc., sec. 1847.)

 Appellants' petition for writ of mandate, filed in this court between the second and third trials of this action, was properly admitted in evidence as a judicial admission, although it was verified by their attorney (*Coward* v. *Clanton*, 79 Cal. 23 [21 Pac. 359]), and although respondent was not a party therein. (22 C. J. 336.) The petition alleged that, at the time of the accident, Leland Warrington was employed by the Red Top Cab Company as a taxicab driver. The uniform worn by the taxicab driver, as described in the companion's testimony, was that custo-

marily worn by the company's drivers and was, therefore, sufficient to prove that he was in the company's employ and acting as such. (*Western Union Tel. Co.* v. *Hale,* 277 Fed. 422; *Phillips* v. *Western Union Tel. Co.,* 194 Mo. App. 458 [184 S. W. 958]; *Western Union Tel. Co.* v. *Brown,* (Tex. Civ. App.) 297 S. W. 267.) ■ Appellants' failure to offer any evidence on these issues, although obviously the best advised, requires that the above evidence ''be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict''. (Code Civ. Proc., sec. 2061, subd. 6.) '' 'It is a well-settled rule that when the evidence tends to prove a material fact which imposes a liability on a party, and he has it in his power to produce evidence which from its very nature must overthrow the case made against him if it is not founded on fact, and he refuses to produce such evidence, the presumption arises that the evidence, if produced, would operate to his prejudice, and support the case of his adversary.' '' (*Bone* v. *Hayes,* 154 Cal. 759, 765 [99 Pac. 172, 175]; *Alloggi* v. *Southern Pac. Co.,* 37 Cal. App. 72 [173 Pac. 1117]; *Perry* v. *Paladini, Inc.,* 89 Cal. App. 275 [264 Pac. 580].)

Since appellants' motions to strike out testimony, for a nonsuit and for a directed verdict, were based upon the same matters heretofore fully discussed, separate consideration of alleged errors in denying such motions need not be given, for to do so would merely lead to repetition. Finding no merit in appellants' claims of error, the judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.