[Civ. No. 18391.   Second Dist., Div. One.   Mar. 12, 1952.]

LOUIS JACOBS, Respondent, v. BOZZANI MOTORS, LTD. (a Corporation) et al., Appellants.

Eugene S. Ives, Spray, Gould & Bowers and Henry F. Walker for Appellants.

Samuel P. Young for Respondent.

WHITE, P. J.—Plaintiff brought an action to recover for personal injuries sustained when he was struck by an automobile operated by defendant Bernstein. The vehicle was registered with the Department of Motor Vehicles as being owned by defendant J. O. Reade, an employee of defendant Bozzani Motors, Ltd. The vehicle had been loaned to defendant Bernstein for use while his own automobile was being repaired at Bozzani Motors, Ltd. A jury trial resulted in a verdict and judgment against all of the above-named defendants, the judgment against Reade and Bozzani being limited

to the sum of $5,000 pursuant to the provisions of section 402 of the Vehicle Code. All of the defendants have appealed, assigning error in the giving and refusal of instructions pertaining to the issues of negligence and contributory negligence; and in addition it is contended, with respect to the question of ownership by Bozzani Motors, that the evidence was insufficient to support the jury's finding that Bozzani Motors was a coowner of the vehicle with Reade, and that erroneous instructions were given to the jury in this regard.

Inasmuch as we have concluded, upon a consideration of the evidence and the entire charge to the jury, that prejudicial error has not been shown (Cal. Const. § 4½, art. VI), a somewhat detailed exposition of the evidence is necessary.

Plaintiff, a journeyman plumber, was employed to install a water pipe upon premises on North Soto Street in the city of Los Angeles, near the intersection of City Terrace Avenue. The owners of the premises having refused him permission to bring his truck upon their property, he parked the truck on Soto Street, parallel to and 6 to 10 inches from the west curb, and 63 feet south of City Terrace Avenue. Along the left side of the truck, over the fenders, there was a rack to hold pipe, as well as a pipe vise for use in cutting and threading pipe on the job. At about 2:30 in the afternoon defendant Bernstein, traveling east on City Terrace Avenue, brought his vehicle to a stop at Soto Street, made a right turn, proceeded south on Soto Street, and struck the plaintiff at or near the rear of the truck. It is asserted that there is a conflict in the evidence as to whether plaintiff was behind the truck, or out to the left of it when he was struck. (This question will be considered in connection with defendants' attack on the instructions given with respect to plaintiff's duty of care in the circumstances.)

It is contended that the court erred in giving the following instruction:

"It is a part of the duty of the operator of a motor vehicle to keep his machine always under control, so as to avoid collision with pedestrians using the highway. He has no right to assume that the road is clear, but, under all circumstances, and at all times, he must be vigilant, and must anticipate and expect the presence of others."

It is argued that an autoist does have the right to assume that the road is clear of the presence of negligent persons and is not required to anticipate the presence of others "under all circumstances and at all times," but may assume that

others will obey the law; that he is not under the absolute duty to exercise such control of his vehicle that a collision will not occur, but that his duty is to exercise reasonable care to that end.

The court, at the request of plaintiff, instructed the jury as follows:

"There is no duty imposed on a workman to be constantly on the look-out for motor vehicles. If a workman on a public street is exercising the care ordinarily exercised by a workman under similar circumstances, he may properly assume that the automobile drivers will not be negligent in running him down without warning, and especially is this true where the workman remains within a space especially provided by law for the parking of automobiles."

It is immediately apparent that the error in this instruction lies in applying it to a workman who is working in the street solely for his own convenience, and not from any reasonable necessity. The situation to which the instruction properly applies is illustrated in *Scott* v. *City & County of San Francisco*, 91 Cal.App.2d 887, 890 [206 P.2d 45], where a workman attending a tar kettle was struck by a streetcar. The court there said:

"Respondents suggest that the rule with regard to the quantum of care required of workmen in public streets should be limited to those whose work has a direct relation to the streets, i.e., to street sweepers, trackmen, etc. The rule has not been so limited. In *Zumwalt* v. *E. H. Tryon, Inc.*, 126 Cal.App. 583 [14 P.2d 912], the rule was applied to a sheepherder driving his band of sheep along a public road and in *Ostertag* v. *Bethlehem etc. Corp.*, *supra*, 65 Cal.App.2d 795 [151 P.2d 647], the rule was applied to one working in the interior of a building under construction, the court saying at page 801:

" 'The courts have often recognized that where a person *must* work in a position of possible danger the amount of care which he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case.' " (Italics added.)

Illustrative, on the other hand, of the type of case in which the instruction is erroneous, is *Milton* v. *Los Angeles Motor Coach Co.*, 53 Cal.App.2d 566, 573 [128 P.2d 178],

where a commercial photographer was injured while taking a picture in the street, and it was held:

"Plaintiff's testimony that it was customary for photographers in Beverly Hills to use the streets in the taking of pictures and that it was necessary for him to place his camera in the street in order to get the particular picture he wished to take with the lens he was using, was evidently intended to bring him within the rule stated in the instruction, but that rule cannot be extended to protect photographers or others who may occasionally use the streets in the pursuit of their occupations if they do so from choice and not from necessity. In *Carlsen* v. *Diehl* (1922), 57 Cal.App. 731 [208 P. 150], it was held that a truck driver who was loading his truck in a hazardous position alongside a driveway and who was not forced to remain in that particular place as a matter of duty, although he had a right to be there, was not to be classed with laborers engaged in street work; an instruction in less objectionable form than the one in the instant case was held to be erroneous."

In the case now before us, as in the case immediately above referred to, there was no reasonable necessity for the plaintiff to use the street for his work. Having nevertheless chosen to do so, he was required to exercise the same quantum of care as any other person in the street, and was not excused from exercising such care by reason of the necessity of giving attention to his work. The operations of cutting and threading pipe could have been performed at any number of other safer, although less convenient, locations.

From a consideration of the authorities, we conclude that the proper rule to be applied is that of reasonable necessity—that the quantum of care is less not only where a workman is doing work *to* the street, but where reasonable necessity requires his work to be done in the street. In the present case we find no reasonable necessity for a plumber doing a job within private premises to use the public street for the purpose of cutting and threading pipe.

We have concluded, however, from an examination of the entire record, that prejudicial error has not been shown, and that it does not appear from the record that a different result would have been probable had the questioned instructions not been given. In such circumstances, the verdict of the jury should be upheld. (Cal. Const. art. VI, § 4½; Code Civ. Proc., § 475; *Marr* v. *Postal Union Life Ins. Co.*, 40 Cal. App.2d 673, 686 [105 P.2d 649]; *Dieterle* v. *Yellow Cab Co.*,

53 Cal.App.2d 691 [128 P.2d 132] ; *Anderson* v. *Freis*, 61 Cal. App.2d 159, 164, 165, 166 [142 P.2d 330].)

The instruction first hereinabove quoted (with reference to the duty of the operator of a motor vehicle to keep his machine always under control, etc.) has been held subject to criticism because, standing alone, it might be understood by the jury to impose on the operator the absolute duty to avoid a collision (*Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157, 167 [195 P.2d 416] ; *Anderson* v. *Freis, supra,* p. 164 et seq.). In the last-cited case, however, it was found that there was no prejudicial error, in view of the other instructions given upon the subject of negligence, and the language of the court in that case is directly applicable to the situation presented in the instant cause. The court said, in part (p. 165) : "But here, as in the authorities cited, we find no prejudicial error in the giving of said instruction. The jury was fully instructed upon the subject of negligence. The trial court instructed the jury on the definition of negligence; that plaintiff affirmatively alleged in his complaint that defendant Freis negligently operated his automobile; that the 'affirmative of the issues must be proved by a preponderance of the evidence'; that 'the affirmative here is upon plaintiff . . . as to all affirmative allegations of the complaint'; and that in order to impose liability upon the defendant, 'his negligence must have been the proximate cause of plaintiff's . . . injuries.' Reading all of the instructions together, it appears impossible that the jury could have understood that there was any absolute duty on defendant to avoid a collision and it appears certain that the jury must have understood that in order to impose liability upon defendant, it must have been shown by a preponderance of the evidence that he failed in his duty to exercise ordinary care."

While the instruction concerning the quantum of care required of a workman in the street is not properly applicable to one who puts himself in a position of danger simply for his own convenience, we are convinced that the jury was not misled thereby, but on the contrary found that plaintiff was actually in a place of safety where he had a right to assume that operators of vehicles in the exercise of ordinary care would not strike him. It is to be noted that the criticized instruction emphasizes the right of the workman to relax his vigilance when he remains within a space provided for the parking of automobiles, and to that extent is correctly

applied to one who is working behind a properly parked truck (*State Comp. Ins. Fund* v. *Scamell*, 73 Cal.App. 285, 290 [238 P. 780]; *Medlin* v. *Spazier*, 23 Cal.App 242 [137 P. 1078]). Further, as was held in *Regan* v. *Los Angeles Ice & Cold Storage Co.*, 46 Cal.App. 513 [189 P. 474], where the plaintiff was standing in the street behind the left rear fender of a vehicle parked at the curb and was struck from behind by defendant, "negligence is always relative and to be determined in view of all the circumstances of the particular case. Thus, if there was a plainly visible obstruction in a street, a person taking a position on or immediately in front of it would be in a position of safety and might be relieved of the duty of observing traffic as he would be if he remained on the sidewalk."

It is highly improbable that the jury, on the strength of the instruction in question, rendered a verdict for plaintiff even though they believed that he was in the street alongside the truck and not maintaining a lookout for approaching vehicles. The reasonable assumption is that the jury applied the instruction to the situation of a workman actually working behind a parked truck in a place of comparative safety. Considering the instruction in the light of the instructions preceding it, the jury could not but understand that whether it was necessary for the plaintiff to work in the street or not, it was his duty if he ventured out in the path of traffic to exercise the same amount of care as would be required of any other person who might do so.

A conclusion that the errors, if any, were not prejudicial, is fortified by a consideration of the evidence. The testimony of the defendant driver was in many respects self-contradictory and in conflict with inferences to be drawn from physical facts in connection with the accident. Plaintiff's helper, Mr. Chavez, testified that he was standing behind the center of the rear of the truck and plaintiff was standing about 2 feet to the rear of the left rear fender of the truck; that he (Chavez) heard a scream, looked around and saw defendant's automobile; he cried, "Look out!" but there was no time to get out of the way. Chavez was also injured and his eyeglasses broken, as he was knocked against the truck. A witness who was in a building near the scene heard a scream, then a thud, looked out a window and saw defendant's car passing the left rear of the truck and Chavez picking himself up in the street near the curb behind the truck. Defendant's automobile, as she saw it, was at an

angle of 45 degrees, facing southeasterly, with its right rear corner 3 to 4 feet from the curb.

The issue of whether plaintiff was struck while behind the truck or while out in the street was fully and vigorously tried, and the issue resolved against the defendants.

It is contended that the evidence is insufficient to support the judgment against Bozzani Motors as an owner of the vehicle and that the court erred when it instructed the jury as follows:

"In determining whether or not defendant, Bozzani Motors, Ltd., a corporation, was also an owner of the Plymouth automobile at the time of the accident, you should consider all of the evidence, direct or indirect in this case pertaining to ownership and the incidents of ownership which you may consider are in part as follows:

"1. Possession of the automobile.

"2. Free use of the automobile for its benefit.

"3. Claim of ownership of the automobile.

"4. Paying for or furnishing gas and oil and lubrication for the automobile.

"You are also instructed that there is a rebuttable presumption that things which a person possesses are owned by him, and also that a person is the owner of property from exercising acts of ownership over it, that section 66 of the California Vehicle Code which was given you provides in part that an owner is entitled to possession." (Underlining is as it appears in the reporter's transcript.)

Appellants urge that the instruction erroneously assumes that there was evidence of each of the four enumerated matters and that each of these had been established; that in so doing the instruction invaded the province of the jury.

We conclude that the special verdict of the jury finding Bozzani Motors, Ltd., to be an owner of the vehicle is without substantial support in the evidence. The undisputed facts are that defendant J. O. Reade was the superintendent of the parts and repair department of Bozzani Motors. Several months prior to the accident Reade bought a 1935 Plymouth automobile from Bozzani Motors for $25 and the cost of some repairs, and the certificate of ownership was indorsed and forwarded to the Department of Motor Vehicles, which issued a new certificate in the name of Reade. Reade drove the car to and from work and also used it in transacting his personal affairs. His wife also used it, although they had

another car. He bought gasoline for it when on a long trip, but his employer furnished gasoline for driving back and forth to work and for driving on his employer's business. Between June 2, 1949, and June 18, 1949, Reade loaned his car out twice to customers, and was paid nothing therefor. Reade was away on vacation from June 18, 1949, to July 5, 1949. He left the Plymouth at the shop. Shortly before taking his vacation, Reade told Charles Bozzani, his assistant, that Bernstein's car would shortly be brought in for repairs which would require four to five days, and to lend Reade's Plymouth to Bernstein while the latter's car was being repaired. While Reade was on vacation Bernstein brought his car in for repairs and asked for the loan of a car pending completion of the repairs. He was given the Plymouth and signed a receipt therefor, a printed form addressed "To the Bozzani Motors, Ltd.," whereby he agreed to safely keep the car and return it in good condition, or to pay any loss or damage sustained, and to save Bozzani Motors harmless from all suits or demands arising from injuries to persons or property caused by operation of the vehicle. The accident occurred while Bernstein was returning the Plymouth to Bozzani Motors, Ltd. Bernstein paid Reade $20 to cover damages to the vehicle resulting from the accident and Reade paid Bozzani Motors $20 for the necessary repairs.

We are in accord with appellants' contention that "The most which can be said under the evidence is that it established Bozzani Motors, Ltd., or Charles Bozzani to have been made a limited or special bailee of the Plymouth sedan by its owner, Reade, for the purpose of letting Bernstein have and use it while his car was being repaired and while Reade was away on his vacation. The bailee of a vehicle, even a general unlimited bailee, who is not driving it at the time of the accident, is not liable under section 402 of the Vehicle Code and judgment in favor of the injured or damaged party cannot be supported against such bailee. (*Overgard* v. *Beaverson*, 89 Cal.App.2d 449 [201 P.2d 67].)" As stated in the cited case (quoting from *Graf* v. *Harvey*, 79 Cal.App.2d 64 [179 P.2d 348]), "The Vehicle Code does not declare that a bailee or one who borrows the car from the bailee is an owner within the meaning of section 402(a). Their liability is to reimburse the owner, and is not a primary liability to the injured person."

Arguing that there was sufficient evidence to go to the jury on the issue of ownership, respondent points out

that the receipt was from Bernstein to Bozzani Motors; that Bozzani Motors had possession of the automobile and had free use of it and furnished gas, oil and lubrication. In addition, it is argued that the jury was justified in not believing Bozzani's claim that it did not own the automobile, in that although defendant Amerigo Bozzani, president and general manager, testified that his company never loaned out automobiles to customers, nevertheless a supply of forms "Automobile Loan Receipts" was kept in defendant's service department, and a clerk testified she had filled out over 10 of these forms in the previous two years. We consider these asserted facts insufficient. The furnishing of gas and oil, for example, was, it was testified, in pursuance of an employment agreement whereby the employer furnished department heads with gas and oil for their personal automobiles used in going to and from work and in connection with the business, such as going out to make estimates on repair work. The "possession" by Bozzani Motors was temporary, while Reade was on vacation, and pursuant to authorization by Reade. The "free use" of the automobile consisted merely in that it had been loaned out on two or three previous occasions, and Reade used it in making trips on his employer's business. Reade testified that he paid for taxes and repair work on the car; that he was under no obligation to let Bozzani Motors use it; it was his car to use as he saw fit. Whatever argument might be advanced as to credibility of witnesses, the fact remains that the burden of proving ownership in Bozzani Motors rested upon plaintiff, and that burden is not met by what amounts to no more than a showing that Bozzani Motors derived some occasional slight benefit by the use of an employee's automobile. As was said in *Reese* v. *Smith*, 9 Cal.2d 324, 328 [70 P.2d 933], "If the existence of an essential fact upon which a party relies is left in doubt or uncertainty, the party upon whom the burden rests to establish that fact should suffer, and not his adversary. A judgment cannot be based on guesses or conjectures." The case of *Nash* v. *Wright*, 82 Cal.App.2d 467, 473, 474 [186 P.2d 686), relied upon by respondent, is readily distinguishable. There the court held that the defendant "could not by virtue of a private agreement enjoy the free use of a truck registered to the name of his associate and thereafter avoid liability on the ground of nonownership of the vehicle so used." The facts there were that the vehicle was being operated by an employee of defendant and came from a

"pool" of vehicles used jointly by defendant and another company. In the present case the evidence fails to show that Bozzani Motors, Ltd., made any claim of ownership of the vehicle or that its asserted acts of ownership in connection therewith were other than pursuant to instructions from Reade whereby it was made a bailee of the vehicle.

The views herein expressed sufficiently cover all the points raised on this appeal.

The judgment is affirmed as to defendants Bernstein and Reade, and reversed as to defendant Bozzani Motors, Ltd., with instructions to enter judgment that plaintiff take nothing against Bozzani Motors, Ltd. Respondent to recover costs on appeal against appellants Bernstein and Reade; appellant Bozzani Motors, Ltd. to recover from respondent its fair proportionate share of costs on appeal incurred in the presentation of the single issue of ownership.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied March 31, 1952.